U.S. District Court
Wisconsin Eastern

JAN 1 7 2020

FILED
Stephen C. Dries, Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          Case No. 19-CR-67

XENGXAI YANG,

Defendant.

---

## PLEA AGREEMENT

---

1.       The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Andrew J. Maier, Assistant United States Attorney, and the defendant, Xengxai Yang, individually and by attorney Kevin D. Musolf, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.       The defendant has been charged in a three-count indictment, which alleges violations of:

     a.       Title 18, United States Code, Sections 2113(a) and (d);

     b.       Title 18, United States Code, Sections 924(c)(1)(A)(ii) and (B)(i); and

     c.       Title 26, United States Code, Sections 5841, 5845(a), 5861(d), and 5871.

3.     The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

See Attachment A.

5.     The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> At about 5:51pm on March 15, 2019, the defendant walked into a Community First Credit Union on W. Spencer Street in Appleton in Outagamie County. This credit union is in the State and Eastern District of Wisconsin. The defendant wore a black plastic theater mask and sunglasses, and had a black hooded sweatshirt with the hood covering his head. The defendant held a Savage semiautomatic .22 rifle up and pointed forward as he approached the counter. The defendant pointed the rifle toward a teller, and then aimed the rifle at the on-duty branch manager. The defendant held the teller and branch manager at gunpoint while a second teller assisted a customer in the drive-up window.
>
> After the second teller completed the transaction with the drive-up customer, the defendant directed both tellers to give him the money in their respective cash drawers. As the defendant did this, he chambered a round in the rifle. The defendant placed the money in a nylon drawstring backpack and then restrained one of the tellers and the branch manager with zip-ties. The defendant then left the credit union on foot, exiting the doors at 5:57pm.
>
> A patrol officer with the Appleton Police Department was in the immediate area. The officer saw the defendant walking on a neighborhood street approximately a block from the bank and stopped him. The defendant was still wearing the black hooded sweatshirt, black plastic theater mask, and sunglasses at the time the officer stopped him. Officers then took the defendant into custody. A search incident to arrest revealed a loaded Savage semiautomatic .22 rifle, which had been modified

2

to be short-barreled and almost without a stock, under his hooded sweatshirt; two additional loaded magazines for the rifle; a 100-round box of .22 ammunition; a dark green nylon drawstring backpack with $10,745 in US Currency; and black plastic zip-ties.

Officers transported the defendant to the Appleton Police Department. A detective read the defendant his rights and the defendant agreed to provide a statement. The defendant admitted deciding to rob the credit union, where he was a customer, because he "decided to try something new today, so I robbed a bank." The defendant stated he zip-tied the employees so they were unable to "press an emergency button or anything." The defendant stated he felt a little bad about zip tying the employees, but felt "not at all" bad about pointing a loaded firearm at the employees during the robbery. The defendant stated he cut the barrel and stock of the rifle to make the gun shorter, and believed he cut about 10 inches off the original 21-inch barrel.

Officers measured the barrel of the Savage .22 rifle the defendant used, and found it to be 9.5 inches. The rifle's serial number is obliterated. The firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

Community First Credit Union is insured by the National Credit Union Association.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6.      The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines:

        a.      Count One, 25 years in prison and $250,000; and

        b.      Count Two, life in prison and $250,000. This count also carries a mandatory minimum of 10 years of imprisonment, which must be consecutive to any other sentence.

Each count also carries a mandatory special assessment of $100, and a maximum of 5 years of supervised release. The parties further recognize that a restitution order may be entered by the

court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 30 of this agreement.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNT

8.      The government agrees to move to dismiss the remaining count of the indictment at the time of sentencing.

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charge of armed bank robbery as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> *First*, the defendant took or attempted to take, from the person or presence of another, money belonging to or in the possession of Community First Credit Union; and

> *Second*, at the time the defendant took the money, the deposits of the credit union were insured by the National Credit Union Administration; and

> *Third*, the defendant took or attempted to take such money by means of force and violence, or by means of intimidation; and

> *Fourth*, the defendant assaulted or put in jeopardy the life of another person by the use of a dangerous weapon or device, while committing or attempting to commit the robbery.

>> "Assault" means to intentionally attempt or threaten to inflict bodily injury upon another person with the apparent and present ability to cause such injury that creates in the victim a reasonable fear or apprehension of bodily harm. An assault may be committed without actually touching, striking, or injuring the other person.

10.     The parties understand and agree that in order to sustain the charge of brandishing a short-barreled firearm during and in relation to a crime of violence as set forth in Count Two the government must prove each of the following propositions beyond a reasonable doubt:

4

*First*, the defendant committed the crime of Bank Robbery as charged in Count One; and

*Second*, the defendant knowingly used a firearm during and in relation to such crime.

> "Use" means the "active employment" of a firearm. The term is not limited to use as a weapon, and includes brandishing and displaying a firearm.

In addition, in order to expose the defendant to a mandatory 10-year sentence under Section 924(c)(1)(B)(i), the government must prove that the firearm the defendant used during and in relation to the Bank Robbery was a short-barreled rifle.

> "Short-barreled rifle" is defined in Title 26, United States Code, Section 5845(a)(3) as a rifle with a barrel of less than 16 inches in length.

## SENTENCING PROVISIONS

11.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13.     The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

5

## Sentencing Guidelines Calculations

15.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

## Base Offense Level

17.     The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count one is 20 under Sentencing Guidelines Manual § 2B3.1(a), and that the applicable sentencing guideline for the offense charged in count two is 120 months under Sentencing Guidelines Manual § 2K2.4(b).

## Specific Offense Characteristics

18.     The parties agree to recommend to the sentencing court that the following adjustments are applicable to the offense level for the offense charged in count one:

> a.     A 2-level adjustment under Sentencing Guidelines Manual § 2B3.1(b)(1), in that property was taken from the credit union; and

b.      A 2-level adjustment under Sentencing Guidelines Manual §
2B3.1(b)(4)(B), in that the defendant used restraints in order to
facilitate his escape.

## Role in the Offense

19.     Pursuant to Sentencing Guidelines Manual § 3B1.1 and 3B1.2, the parties agree to recommend to the sentencing court that no adjustment be given for an aggravating or mitigating role in the offense, as the defendant was neither an organizer, leader, manager, nor supervisor. The government agrees to make no recommendation regarding the defendant's role in the offense; however, the government will advise the sentencing court with regard to any facts or law relevant to this adjustment.

## Acceptance of Responsibility

20.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

21.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22.     Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23.     The government agrees to recommend a sentence within the applicable sentencing guideline range for Count One, as determined by the court. The government agrees to recommend a consecutive sentence of 120 months in prison for Count Two.

## Court's Determinations at Sentencing

24.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of

8

Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27.    The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

## Fine

28.    The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

## Special Assessment

29.    The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing, or upon further order of the court.

## Restitution

30.    The defendant agrees to pay restitution as ordered by the court. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

31.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

  a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

  b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

  c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

  d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

  e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32.     The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has

explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

35. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

36.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

38.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

39.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed

12

against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.


Date: 1-17-20

XENGXAI YANG
Defendant


I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


Date: 1/17/20

KEVIN D. MUSOLF
Attorney for Defendant


For the United States of America:


Date: 1/17/20

MATTHEW D. KRUEGER
United States Attorney


Date: 1/17/2020

ANDREW J. MAIER
Assistant United States Attorney


14

## ATTACHMENT A

### COUNT ONE

*THE GRAND JURY CHARGES THAT:*

*On or about March 15, 2019, in the State and Eastern District of Wisconsin,*

### XENGXAI NMI YANG

*knowingly took, by force, violence, and intimidation, from the person and presence of others,*

*United States currency, belonging to, and in the care, custody, control, management, and*

*possession of Community First Credit Union, 1235 West Spencer Street, Appleton, Wisconsin,*

*the deposits of which were then insured by the National Credit Union Administration, and in*

*committing this offense put in jeopardy the lives of other persons by use of a dangerous weapon,*

*to wit: a firearm.*

*In violation of Title 18, United States Code, Sections 2113(a) and (d).*

And

### COUNT TWO

*THE GRAND JURY FURTHER CHARGES THAT:*

*1.      On or about March 15, 2019, in the State and Eastern District of Wisconsin,*

### XENGXAI NMI YANG

*knowingly carried, used, and brandished a firearm during and in relation to a crime of violence*

*for which he may be prosecuted in a court of the United States, that is, Count One of this*

*Indictment.*

*2.      The firearm is more fully described as a Savage Model 64 .22 rifle with*

*obliterated serial number, modified through a cut-off barrel.*

*3.      The rifle as modified had a barrel of less than 16 inches in length.*

*All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and (B)(i).*