UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                          Case No. 19-CR-67

XENGXAI YANG,

Defendant.

## SENTENCING MEMORANDUM

Xengxai Yang, by counsel, hereby submits this sentencing memorandum. Counsel requests that the Court impose a sentence below the effective guideline range to be followed by a term of supervised release.

## I.      Procedural History

Yang is charged in an indictment with armed bank robbery, brandishing a firearm during the bank robbery, and possession of a short barreled rifle, all contrary to 18 U.S.C. § 2113(a), 18 U.S.C. § 924(c)(1)(A)(ii), (B)(I), and 26 U.S.C. §§ 5841, 5845(a), 5861(d), 5871. Docket No. 1.

Yang made his initial appearance with retained counsel (Attorney Musolf) on April 23, 2019, and was ordered detained. Docket Nos. 5, 7. He has been housed at the Brown County jail since that date.

Yang's retained counsel filed a notice of an insanity defense (Docket No. 8), and after a hearing, the Court ordered a psychological evaluation. Docket Nos. 9, 10. On October 10, 2020, Dr. Berney filed a report (Docket No. 13) that, in very short summary, did not support the insanity defense. Yang and his attorney withdrew the insanity defense. Yang signed a plea agreement and on January 17, 2020, entered a guilty plea to Counts One and Two of the indictment. Docket Nos. 15, 16.

However, on February 6, 2020, Yang filed a *pro se* request to withdraw his plea and for appointment of new counsel. Docket No. 17. The Court held a hearing on February 10, 2020, at which Yang's retained counsel also moved to withdraw. Docket No. 18. The Court granted that request and ordered new counsel to be appointed. *Id*. The Court also noted that new counsel "will be allowed to file a motion to withdraw the defendant's plea and/or a motion for an insanity defense, if either is warranted." *Id*.

Undersigned counsel filed a notice of appearance on February 19, 2020. Docket No. 19. Sentencing was adjourned upon a defense motion. Docket Nos. 21, 22. After several status conference hearings (Docket Nos. 24, 25), counsel for Yang filed a motion to withdraw Yang's guilty plea and a request for leave to re-institute the insanity defense. Docket No. 27. Yang also filed a neuro-psychological examination report completed by Dr. Denver Johnson. Docket No.

28. After a hearing and briefing by the parties (Docket Nos. 31, 32, 33), the Court entered an order granting the motion to withdraw the guilty plea. Docket No. 34. Counsel for Yang then filed a notice of intent to assert an insanity defense. Docket No. 36.

On September 18, 2020, the Court held a telephone status hearing during which the parties consented to a court trial. Docket No. 37. The parties noted that the facts of the case would not be contested, and that the only issue for the Court at trial would be the defendant's mental state. *Id*. Yang filed a signed waiver of his right to a jury trial (Docket No. 38), which the Court accepted after a hearing and colloquy with the defendant. Docket Nos. 39, 40.

On October 29, 2020, the Court held a court trial in which Dr. Berney and Dr. Johnson were the only witnesses. Docket No. 43, 44. The Court found that Yang had not established the insanity defense and found Yang guilty on all three counts of the indictment. *Id*. Sentencing is scheduled for February 4, 2021.

## II.    Nature and Circumstances of the Offense

The facts of the case are not in dispute, and are summarized in the PSR at paragraphs 17 – 25. In short, on March 15, 2019, Yang entered Community First Credit Union in Appleton, Wisconsin, while wearing a mask and hooded sweatshirt. He carried a short-barrelled .22 rifle which he pointed at the tellers. He directed them to give him money from various tills, and restrained two of the

tellers with cable ties. Yang left the bank on foot with $10,745. As he walked away, a patrol officer saw Yang wearing the same clothing and mask approximately a block away from the bank. The officer took Yang into custody and recovered the gun, the money, and Yang's clothing. Yang gave a recorded statement admitting all of the events of the robbery, including shortening the barrel of the .22 rifle.

## III.    History and Characteristics of the Defendant

Yang is 21 years old. He grew up in Appleton, Wisconsin, in an intact family home with his parents and eight siblings, with extended family in the area. Up to the facts of this case, Yang had a positive if unremarkable life. He lived with his family, went to school, held a few jobs (with one long stint as a busboy), babysat for relatives, and went fishing for fun. The support letters from his family uniformly say that he was pleasant and friendly. He notably lacks a criminal history, having no law enforcement contacts as an adult or juvenile.

Yang's mother described the defendant as having "memory and educational struggles" throughout his history (PSR ¶70), and his brother also confirmed a long history of comprehension issues with the defendant. PSR ¶72. In 2009, at approximately age nine, Yang was referred for a psychological evaluation due to slow academic progress. This evaluation confirmed his family's historical opinions, finding Yang to have extremely low working memory, deficits in verbal

comprehension and processing, significant attention deficit, and a full scale IQ of 72. PSR ¶79.

The Court received psychological evaluations performed by Dr. Berney and Dr. Johnson for the NGI phase of the case. While they differed in their ultimate conclusions regarding the defendant's mental impairment at the time of the crime, both doctors diagnosed Yang with a variety of mental illnesses and congnitive disorders. Specifically, Dr. Berney found that Yang has concrete thinking[1] and that his "ability for deductive reasoning, planning and forethought are compromised." Docket No. 13 at 6. Dr. Berney diagnosed Yang with mild intellectual disability, depressive disorder due to another medical condition (closed head injury), moderate neurocognitive disorder by history, malingering (regarding memory deficits), history of attention deficit disorder, and history of tic disorder. *Id.* at 9.

Dr. Johnson diagnosed Yang with mild intellectual disability, major depressive disorder mild, social anxiety disorder, panic disorder, post-traumatic stress disorder, other psychotic disorder in remission, post-concussive syndrome, and historical diagnoses of attention deficit disorder and Tourette's disorder. Docket No. 29 at 33.

---

1 Concrete thinking is reasoning that is based on what you can see, hear, feel and experience at the moment, and can be considered the opposite of abstract reasoning.

## IV. Sentencing Options

18 U.S.C. § 3553(a)(3) directs the Court to consider the kinds of sentences available in making the sentencing decision. The sentences available in this case are as follows:

A. A statutory sentencing range of zero to 25 years imprisonment on Count One pursuant to 18 U.S.C. § 2113(d), a consecutive statutory range of 10 years to life on Count Two pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), (B)(i), and a statutory range of zero to 10 years on Count Three pursuant to 28 U.S.C. § 5871. PSR ¶95.

B. For Counts One and Three, an advisory guideline range of 51 - 63 months, based on an offense level of 24 and a criminal history category of I. PSR ¶96. The guideline range for Count Two is the consecutive statutory mandatory minimum of 120 months, resulting in a total effective guideline range of 171 – 183 months (14¼ - 15¼ years). *Id*.

C. A non-guideline sentence, subject to the 120-month consecutive mandatory minimum term.

D. A term of supervised release of one to five years, pursuant to 18 U.S.C. § 3583(b)(1). PSR ¶98.

## V. Argument

The guidelines for the bank robbery and weapon possession parts of the case (Counts One and Three) suggest an advisory imprisonment range of 51-63 months (4¼ - 5¼ years), while the brandishing a weapon portion of the case (Count two) requires a consecutive 120 month (10 year) sentence. Putting the three together results in a total effective guideline range of 171 – 183 months (14¼ - 15¼ years). Separating the counts makes sense, one supposes, in the realm of guideline

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

analysis. But in practical terms, Yang's actions were all of a single piece — he robbed a bank while brandishing a short barreled rifle, and the main question at sentencing is what sentence would be sufficient but not greater than necessary to punish Yang for his crime.

Ten years by itself is a very long sentence, and it is the very lowest amount that Yang could receive. Since he has no criminal history of any kind, any sentence will be Yang's longest. He has been in custody since the date of the offense, starting first at the Outagamie County jail and, for the lion's share of the approximately 23 months since his arrest, Yang has been housed at the Brown County jail. Both facilities are county jails, not prisons, and thus do not have much in the way of rehabilitative programming. Yang's punishment has already started, and will continue for many years to come.

The guidelines and consecutive mandatory minimum sentence together encompass the nature and circumstances of the offense. Congress made the legislative determination that brandishing a firearm during a bank robbery requires a 10-year consecutive term of imprisonment. That is a stiff punishment, and by itself fulfills the policy goals of adequate deterrence and protection of the public. Because of its mandatory consecutive nature, the overall sentence reinforces the deterrence and public protection that come from the 10 years for

brandishing. The guidelines suggest that the overall sentence should be between 14¼ - 15¼ years. That amount would definitively meet the policy goals of § 3553(a), but counsel respectfully argues that a sentence under the range would also meet the statutory requirements.

Punishments in state and federal court are often graduated. Defendants can build their way up to long sentences, serving progressively longer terms as their crimes either increase in number or severity. Yang's case is different, as this is his first offense. He didn't build up to a severe crime and earn his way into federal court; rather, his first offense took him immediately to the deep end of the pool. Yang's status as a first offender doesn't shield him from the consequences of his serious and dangerous crime, but it does at least imply that a sentence under the range would still be enough to punish him, deter him, and protect the public. Again, any sentence Yang serves will be his first and longest, and cannot be less than 10 years. A 10-year sentence by itself is long, and it is very likely that the sentence here will be longer than that. Summarily, then, while counsel recognizes that the sentence won't be just 10 years, counsel also argues that the sentence does not need to be 15 years (for example) to address the facts of the case and the statutory sentencing policies.

Deterrence is always a difficult concept to address at sentencing. Some people are deterred by the price of a monetary fine, so they don't get speeding tickets. Others are deterred by jail sentences, some by prison sentences, and some (whether by lack of knowledge or forethought) are not deterred at all. The sentence imposed should promote adequate deterrence, both generally and specifically. Here, for Yang, a sentence below the effective guideline range would still deter him. No matter the actual number, the sentence will be in double digits, and should reasonably work to deter Yang from future crimes, as will the term of supervision that follows. Up to five years of supervision are available, longer than the usual three years. As for general deterrence, a sentence within or below the range will be long enough to have some deterrent effect on others.

Respect for the law flows from several sources in this case. First, the case was thoroughly litigated, and Mr. Yang has had his day in court. Second, the sentence imposed will provide respect for the law. The greater portion of the sentence will come from the statutory mandatory consecutive 10-year term. Congress required that penalty, and its imposition does exactly what the law requires. The fact that the sentence is likely to be longer than that provides more respect. As noted above, the charging statutes and guidelines provide some separation between the parts of what is really a single offense. No matter the

viewpoint, all of Yang's behavior will inform the sentence. No part is overlooked, and the Court's consideration of the offense and the offender when imposing sentence provides respect for the law.

As always, the final question is what sentence is sufficient but not greater than necessary to accomplish the sentencing purposes of § 3553(a). The guidelines try to impose a structure, but try as they might, a fair and just sentence is perhaps more art than science. There is no single sentence that perfectly captures every sentencing policy, and reasonableness is more of a range than a point. Counsel for Yang argues that a sentence below the advisory range would still be sufficient but not greater than necessary under § 3553(a).

## VI.    Conclusion

Therefore, based on the grounds listed above and upon those argued orally at the sentencing hearing, counsel for Yang respectfully requests that the Court impose a sentence below the effective range, to be followed by a term of supervised release. Counsel requests that the Court decline to impose a fine as Yang does not have the financial ability to pay. There is no restitution, as all of the credit union's money was recovered and no restitution claims have been submitted to date.

Dated at Green Bay, Wisconsin, February 2, 2021.

Respectfully submitted,

**s/ Tom Phillip**
Tom Phillip, Bar #1023113
Attorney for Xengxai Yang
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301
Tel:   920-430-9900
Fax: 920-430-9901
tom_phillip@fd.org

N:\Cases-Open\Y-Z\Yang, Xengxai - 20-065\Sentencing\Sent Memo FINAL.docx