```
                    UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF WISCONSIN
                        GREEN BAY DIVISION
-------------------------------------------------------------
 UNITED STATES OF AMERICA,        )
                                  )
                    Plaintiff,    )  Case No. 19-CR-67
                                  )  Green Bay, Wisconsin
        vs.                       )
                                  )  January 17, 2020
 XENGXAI YANG,                    )  3:51 p.m.
                                  )
                    Defendant.    )
                                  )
-------------------------------------------------------------
```

**TRANSCRIPT OF CHANGE OF PLEA**
BEFORE THE HONORABLE WILLIAM C. GRIESBACH
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

```
 For the Plaintiff
 UNITED STATES OF AMERICA:      United States Department of
                                Justice
                                By: Andrew J Maier
                                Office of the US Attorney - 205
                                Doty Street - Ste 301
                                Green Bay, WI 54301
                                Ph: 920-884-1068
                                Fax: 920-884-2297
                                andrew.maier@usdoj.gov
 For the Defendant
 XENGXAI YANG:                  Robinson Law Firm
 (Present)                      By: Kevin D Musolf
                                103 E College Ave
                                Appleton, WI 54911-5771
                                Ph: 920-731-1817
                                Fax: 920-731-0050
                                Mlrlaw@mlrobinsonlaw.com


 U.S. Probation Office:         Brian Koehler


 U.S. Official Transcriber:     SUSAN ARMBRUSTER, RPR, RMR
 Transcript Orders:             Susan_Armbruster@wied.uscourts.gov
```

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.

1            TRANSCRIPT OF PROCEEDINGS

2          Transcribed From Audio Recording

3                  *     *     *

4          THE CLERK:  The Court calls Case No. 19-CR-67, United

5    States versus Xengxai Yang.  May I have appearances, please.

6          MR. MAIER:  Andrew Maier for the United States.

7          MR. MUSOLF:  Attorney Kevin Musolf on behalf of

8    Xengxai Yang who appears in person and in custody.

9          PROBATION AGENT:  Good afternoon, Your Honor.  Brian

10   Koehler on behalf of probation.

11         THE COURT:  Good afternoon all.  So I have the written

12   plea agreement, and it appears from the plea agreement that

13   Mr. Yang will be entering pleas of guilty to the charges of

14   armed bank robbery Count 1 and brandishing a short-barreled

15   firearm during and in relation to a crime of violence as set

16   forth in Count 2.

17         And Count 2, as I understand it, carries a mandatory

18   minimum sentence of ten years consecutive to any sentence

19   imposed in Count 1.

20         MR. MAIER:  Correct.

21         THE COURT:  And Mr. Musolf, have you gone over the

22   plea agreement with your client?

23         MR. MUSOLF:  Yes, Your Honor.

24         THE COURT:  Now, I know we had --  We had an

25   evaluation done earlier at your request.  I think Mr. Musolf,

1  you had raised the possibility -- Was that a competency or

2  insanity defense?

3          MR. MUSOLF:  Insanity, Your Honor.

4          THE COURT:  You don't have doubts about his ability to

5  proceed?

6          MR. MUSOLF:  No, I do not.

7          THE COURT:  In terms of the insanity defense, you have

8  investigated that satisfactorily or sufficiently, satisfactorily

9  going forward?

10          MR. MUSOLF:  Yes.

11          THE COURT:  You've discussed that fully with your

12  client?

13          MR. MUSOLF:  Yes.

14          THE COURT:  Okay.  Well, have you discussed really all

15  of the facts and circumstances of the case, gone over the plea

16  agreement and gone over the discovery materials with your

17  client?

18          MR. MUSOLF:  Yes, Your Honor.

19          THE COURT:  Are you satisfied that should he proceed

20  to enter a plea of guilty today, it will be a knowing and

21  voluntarily plea to each of the counts?

22          MR. MUSOLF:  Yes.

23          THE COURT:  Okay.  And tell me about the plea

24  agreement here, Mr. Maier.

25          MR. MAIER:  Your Honor, the defendant will be entering

1   pleas to Count 1 and Count 2 as you mentioned.  At sentencing,

2   the defense will be free to argue.  The Government will be

3   asking for a sentence in the guidelines range for Count 1 with a

4   consecutive ten-year sentence, 120 months as to Count 2.  My

5   estimate for the guidelines on Count 1 is 37 to 46 months.

6              THE COURT:  Okay.  Other counts are being dismissed?

7              MR. MAIER:  Correct.  There was a possession of short

8   barrel rifle count, that's Count 3, and the Government will be

9   asking to dismiss that at sentencing?

10             THE COURT:  And that was a maximum of ten year

11  sentence?

12             MR. MAIER:  Yes.

13             THE COURT:  Okay.  And so he'll receive acceptance

14  reductions for acceptance of responsibility?

15             MR. MAIER:  Right.

16             THE COURT:  And it is a strong case in any event?

17             MR. MAIER:  Yes, very much so.

18             THE COURT:  Okay.  Mr. Musolf, anything to add on

19  those matters?

20             MR. MUSOLF:  No, Your Honor.

21             THE COURT:  Mr. Yang, you've heard what the attorneys

22  have told me.  Is it your intention now to enter a plea of

23  guilty to those charges?

24             DEFENDANT:  Could you repeat that, please?

25             THE COURT:  Is it your intention to enter pleas of

1    guilty now pursuant to this plea agreement?

2            DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Mr. Yang, would you please stand then and

4    raise your right hand.  The clerk is going to administer the

5    oath before I ask you any further questions.

6            Xengxai Yang, being first duly sworn to tell the

7    truth, the whole truth, and nothing but the truth, testified as

8    follows:

9            DEFENDANT:  Yes.

10           THE COURT:  You can be seated.  Is this your family in

11   back?

12           DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Okay.  Mr. Yang, the rules that govern the

14   proceedings in federal court require that anyone who enters a

15   plea of guilty first has to be placed under oath.  And that's

16   why we placed you under oath so you should understand that now

17   that you've sworn to tell the truth, you're subject to penalties

18   for perjury or false swearing if you fail to tell the truth.  Do

19   you understand that?

20           DEFENDANT:  Yes.

21           THE COURT:  Okay.  The other thing you should

22   understand today is that you don't have to enter pleas of

23   guilty.  You could go to trial on all the charges in the

24   indictment.  The purpose of today's hearing is to make sure that

25   if you do enter a plea of guilty to these charges, they are the

1    result of knowing and voluntarily decisions on your part.

2            In other words, your attorney can advise you, but it

3    has to be your decision whether to plead guilty or not plead

4    guilty, okay.  Do you understand that?

5            DEFENDANT:  Yes.

6            THE COURT:  Okay.  For the record then, tell me your

7    name.

8            DEFENDANT:  Xengxai.

9            THE COURT:  And your last name is?

10           DEFENDANT:  Yang.

11           THE COURT:  And how old are you?

12           DEFENDANT:  Just turned 20.

13           THE COURT:  Just turned 20, where did you grow up?

14   Where did you live before you got put in jail?  I mean, I am

15   just looking for the city.

16           DEFENDANT:  Appleton.

17           THE COURT:  Okay.  Did you go to school there?

18           DEFENDANT:  Yeah.

19           THE COURT:  How far did you go in school?

20           DEFENDANT:  Eleventh grade.

21           THE COURT:  Were you in special ed?

22           DEFENDANT:  Yes.

23           THE COURT:  Did you have an accident at some point in

24   life?

25           DEFENDANT:  Yes, I did.

1    THE COURT:  And what kind of accident did you have?

2    DEFENDANT:  A head injury at work.

3    THE COURT:  Had injury at work?

4    DEFENDANT:  A head injury.

5    THE COURT:  When was that?

6    DEFENDANT:  I'm not sure.  I forgot when.

7    THE COURT:  Okay.  Has that affected your ability to

8    remember things?

9    DEFENDANT:  Yeah and hear voices and stuff.

10    THE COURT:  Okay.  And this is why Mr. Musolf you

11    asked for that investigation?

12    MR. MUSOLF:  Yes.

13    THE COURT:  Okay.  Or evaluation.  So you went to up

14    to 11th grade?

15    DEFENDANT:  Yeah.

16    THE COURT:  Before you were put in jail, did you live

17    --  Did you live with other people?

18    DEFENDANT:  I lived with my parents.

19    THE COURT:  Okay.  And did you work?

20    DEFENDANT:  Yeah, I was working.

21    THE COURT:  Where were you working?

22    DEFENDANT:  I was working at what was it called?  I

23    forgot.  It was a cheese factory.

24    THE COURT:  Cheese factory.  You don't remember the

25    exact name, but it was a cheese factory.  What did you do at the

1    cheese factory?  Were you a cheese maker or a custodian or did

2    you clean things or what did you do?

3              DEFENDANT:  I was a cheese operator.

4              THE COURT:  Operator.  So you worked on machines?

5              DEFENDANT:  Yes.

6              THE COURT:  Did you sometimes load things?

7              DEFENDANT:  No.

8              THE COURT:  Okay.  And how long did you work at the

9    cheese factory?

10             DEFENDANT:  I'm not sure.

11             THE COURT:  Did you have a different job before you

12   started working at the cheese factory?

13             DEFENDANT:  I can't recall.

14             THE COURT:  Are you married?  Do you have a wife?

15             DEFENDANT:  I have a fiance.

16             THE COURT:  Fiance.  Do you have any children?

17             DEFENDANT:  Yeah, Your Honor, I have one.

18             THE COURT:  Is that child in back?

19             DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And is that the one that's being held

21   there or --

22             DEFENDANT:  Yeah, the one in the blue.

23             THE COURT:  In the blue?

24             DEFENDANT:  Yes.

25             THE COURT:  Is that a boy?

1    DEFENDANT:  Yeah.

2    THE COURT:  How old is your son?  Four months or so?

3    DEFENDANT:  I think so.

4    THE COURT:  Do you know how to read?

5    DEFENDANT:  Yeah.

6    THE COURT:  Did you read over the plea agreement?

7    DEFENDANT:  Yes, I did.

8    THE COURT:  And is that your signature on it?  In

9    other words, did you sign it?

10   DEFENDANT:  Yeah, I signed it.

11   THE COURT:  And before you signed it, did you talk

12   about it, talk to your attorney about it?

13   DEFENDANT:  Yes, I did.

14   THE COURT:  And did he explain it to you?

15   DEFENDANT:  He explained it.

16   THE COURT:  Did he answer whatever questions you might

17   have had?

18   DEFENDANT:  Yes.

19   THE COURT:  As you sit here today Mr. Yang, are you

20   under the influence of anything?  And what I mean by that is did

21   you take any drugs, any alcohol, any medications before you came

22   to court today that would affect your ability to understand

23   these proceedings or to make a decision?

24   DEFENDANT:  No, I didn't take anything.

25   THE COURT:  You're in the Brown County Jail?

1    DEFENDANT:  Yes.

2    THE COURT:  That's where you've been?

3    DEFENDANT:  Yeah.

4    THE COURT:  Okay.  You're not --  You don't have

5  access to drugs or alcohol there?

6    DEFENDANT:  I was taking medicine for the voices and

7  memory loss and I was recovering from it, and then they stopped

8  giving me the medicine.

9    THE COURT:  Okay.  Since they stopped giving you that

10  medication, have the voices come back?

11    DEFENDANT:  I still here and there but not anymore.

12    THE COURT:  Not anymore.

13    DEFENDANT:  Sometimes I have flashbacks, and that's

14  how I regain my memory again.

15    THE COURT:  Sure.  Did that interfere at all with your

16  ability to talk with Mr. Musolf and understand your case?

17    DEFENDANT:  Could you repeat that again?

18    THE COURT:  Did your -- the voices interfere with your

19  ability to communicate with Mr. Musolf, your attorney?

20    DEFENDANT:  No.

21    THE COURT:  Okay.  All right.  We're going to go over

22  some of the provisions of the plea agreement that you signed to

23  make sure the record we're making today reflects the fact that

24  you understand the charges and the decision and the rights

25  you're giving up, okay?

1        DEFENDANT:  Okay.

2        THE COURT:  And I'll begin with the elements or the

3   pieces that make up the crime you're pleading guilty to, okay.

4   They are listed in paragraph 9 and paragraph 10 if you want to

5   read along.

6        Now, Mr. Yang, I always emphasize the elements because

7   this tells you what the Government would have to prove in order

8   for you to be found guilty if this case were to go to a trial,

9   okay?  As to the charge of bank robbery, the Government would

10  have to prove, first, that you took or attempted to take from

11  the person or presence of another money belonging to or in the

12  possession of Community First Credit Union.  That's the first

13  thing the Government would have to prove.  That's paragraph 9,

14  page 4.

15       The second element the Government would have to prove

16  is that you took the money, the deposit, of the credit union.

17  At the time you took the money the deposits of the credit union

18  were insured by the National Credit Union Administration.

19       Third, the Government would have to prove that you

20  took or attempted to take such money by means of force or

21  violence or by means of intimidation.  That's third.

22       And then fourth, the Government would have to prove

23  that you assaulted or put in jeopardy the life of another person

24  by the use of a dangerous weapon or a device while committing or

25  attempting to commit the crime.

1    Now, assault -- The word assault as used here means to

2  intentionally attempt or threaten to inflict bodily injury upon

3  another person with the apparent and present ability to cause

4  such injury such that you've created in the victim a reasonable

5  fear or apprehension of bodily harm.  An assault may be

6  committed without actually touching, striking or injuring the

7  other person.  Do you understand those things?

8    DEFENDANT:  Yes.

9    THE COURT:  So that's Count 1.  Count 2, the charge of

10  brandishing a firearm in furtherance of a crime of violence,

11  that would require proof of these elements.  First of all, the

12  Government would have to prove that you committed the bank

13  robbery as charged in Count 1.  And second, the Government would

14  have to prove that you knowingly used a firearm during and in

15  relation to that crime.  Use means the active employment of a

16  firearm.  The term is not limited to use as a weapon.  It

17  includes brandishing or displaying.  So you don't have to have

18  fired it.  If you brandished it, which means show it to the

19  person and point it at them sometimes, that would be using the

20  firearm.

21    And in addition in order for you to be subject to the

22  enhanced sentence here, the ten-year mandatory minimum, the

23  Government would also have to prove that the firearm you used or

24  brandished during the bank robbery was a short-barreled rifle.

25  That means a rifle with a barrel of less than 16 inches in

12

1  length.

2        So those are the things the Government would have to

3  prove for you to be found guilty of these offenses.  Do you have

4  any questions about the elements or what the Government would

5  have to prove, Mr. Yang?

6        DEFENDANT:  No, Your Honor.

7        THE COURT:  Okay.  Then, you should understand what

8  the penalties are for these offenses.  The maximum sentence for

9  the first offense is 25 years in prison.  That's the most you

10  can get for that offense.  The maximum fine is $250,000.  Then

11  Count 2, the maximum is life in prison.  The maximum fine is

12  $250,000 again, but there's a mandatory minimum sentence of ten

13  years in prison for Count 2.  And that mandatory minimum ten

14  years has to be consecutive to any sentence imposed in Count 1.

15        So in other words, I have to sentence you if you're

16  found guilty of both of these offenses first for the bank

17  robbery, and then I have to sentence you for the brandishing a

18  firearm.  And the lowest sentence you can receive for that crime

19  is ten years, and that has to come after.  You have to serve the

20  bank robbery sentence before you serve the brandishing a firearm

21  or use of a firearm one.  Do you understand that?

22        DEFENDANT:  Yes.

23        THE COURT:  Okay.  So the lowest sentence you can

24  receive if you're found guilty of these two offenses is really

25  ten years in prison, ten years.  I could give you time served.

1    So it would be ten years plus which you've already served maybe

2    or some amount of it.  That's the lowest sentence.  The highest

3    sentence you can receive for these offenses is life.  Do you

4    understand that?

5              DEFENDANT:  Yes.

6              THE COURT:  Okay.  Now, if you plead guilty to these

7    offenses today and if I accept your pleas to those sentences, I

8    will find you guilty today.  There's going to be no trial.  You

9    understand that?

10             DEFENDANT:  Yes.

11             THE COURT:  The next hearing we have would be the

12   sentencing hearing.  The first thing I would do at the

13   sentencing hearing is I would determine what the sentence range

14   is for someone in your position under the United States

15   Sentencing Guidelines.  And Mr. Maier told me that the guideline

16   was in the area of 36, was it?

17             MR. MAIER:  36 to 47 months.

18             THE COURT:  36 to 47 months for Count 1, the bank

19   robbery.  And then if I impose the guideline sentence let's say

20   36 months, you would get --  that would be three years.  I have

21   to give you at least ten years on the other charge.  So the

22   lowest if I went to the guidelines would be 13 years.  Do you

23   understand that?

24             DEFENDANT:  Yes.

25             THE COURT:  Okay.  The guidelines are guides to the

1    Court.  They are not mandatory instructions.  So although I have

2    to consider the guidelines, I'm free to impose a sentence that's

3    either above or below the guidelines as long as I give good

4    reasons for doing that.  Do you understand that?

5              DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Do you also understand how the guidelines

7    work?  They require that I determine, you know, the score for

8    the severity of the offense and that's really based upon, you

9    know, the kind of crime it is that gives me a number.  The fact

10   that a un was in involved may increase the number, things like

11   that.  It may go down because you are entering a plea of guilty.

12   It goes down for three levels.  One, I determine that then I

13   look to your Criminal History Category.  And what is his

14   Criminal History Category?

15             PROBATION AGENT:  One.

16             THE COURT:  No record?

17             PROBATION AGENT:  Correct.

18             THE COURT:  So those two variables, the absence --

19   the Criminal History Category and offense severity score will

20   point me to a sentence range in which your sentence would fall.

21   Do you understand that?

22             DEFENDANT:  Yes.

23             THE COURT:  Okay.  You should also understand I am not

24   bound by the recommendations of the attorneys.  I listen closely

25   to what the Government will recommend and what your attorney

15

1    will recommend, but that's not -- I have to make my own

2    decision.  Do you understand that?

3              DEFENDANT:  Yes, Your Honor.

4              THE COURT:  What I can't do is go below a mandatory

5    minimum.  If there's a ten year mandatory minimum here, I have

6    to impose that.  Do you understand that?

7              DEFENDANT:  Yes.

8              THE COURT:  Okay.  Now, by entering this plea, you're

9    giving up.  You're waiving your right to a jury trial and the

10   rights that go with a jury trial.  That's also described in the

11   plea agreement.  But let me ask you, Mr. Yang.  Do you

12   understand what a jury trial is?

13             DEFENDANT:  Yes.

14             THE COURT:  Can you tell me in your own words what a

15   jury trial is?

16             DEFENDANT:  Jury trial is when there's people from

17   outside that comes in and testifies or like to see if you're

18   guilty or not guilty.

19             THE COURT:  Yeah, they have people that testify but a

20   jury, they are the fact finder.  They decide whether the

21   Government has proven guilt beyond a reasonable doubt.  I'll

22   give you an explanation of it to make sure you understand it,

23   okay?

24             DEFENDANT:  Yes.

25             THE COURT:  A jury trial is the procedure we use to

1    resolve the case, to resolve the case, you know, when the

2    parties don't reach agreement.  You've agreed, so we don't have

3    a jury trial.  But if you didn't reach agreement, we'd bring in

4    a jury.  A jury consists of 12 citizens drawn from the district.

5    Now, throughout a trial, you're present in the courtroom with

6    your attorney even when we select the jury.  And in a case like

7    this, I'd bring in --  I'd summons in close to 50 people from

8    the community.  From that larger number, we ask them questions

9    to test their qualifications to make sure they can be fair and

10    impartial and they have no interest in the outcome of the case.

11    Once we qualify the required number of jurors, a list with their

12    names on it gets passed back and forth between the attorneys.

13    And they take strikes to get down to the 12 people of the jury

14    that we then seat in the jury box over here.

15          The Government would then try to prove your case by

16    calling witnesses who testify under oath from this witness stand

17    over here.  You can watch them testify, kind of look them in the

18    eye so to speak.  And through your attorney, you can ask them

19    questions, cross examine them.  That's what we call your right

20    to confront the witnesses against you.

21          After the Government has completed its evidence, you

22    may but are not required to put on a defense.  You don't have to

23    put on a defense because it's the Government's burden to prove

24    guilt beyond a reasonable doubt.  But if you choose to, you can

25    call your own witnesses.  If there are witnesses that you want

1    to call that don't want to come to court, you can get a court

2    order or what we call a subpoena that compels them to come so

3    you can present that testimony.

4         At a trial, you would also have the right to testify

5    on your own behalf, tell the jury your side of story so they can

6    consider that in deciding whether the Government had met its

7    burden.  On the other hand, you don't have to testify.  And if

8    you decided not to testify, I would instruct the jury that's

9    your right.  They can't hold it against you or treat it as

10   evidence in any way.

11        After all the evidence is in, then I instruct the jury

12   on the elements of the offense.  I tell them what they have to

13   find in order to find you guilty, but I also tell them that

14   you're presumed to be not guilty.  And the jury may not return a

15   verdict of guilty unless all 12 unanimously agree that the

16   Government had proven guilt beyond a reasonable doubt.  So those

17   are the rights you're giving up.  Any questions about those?

18        DEFENDANT:  No.

19        THE COURT:  Has anyone made any promises to you to get

20   you to waive your rights and enter a plea of guilty to these

21   offenses other than the promises that are set forth in writing

22   in the plea agreement?

23        DEFENDANT:  No.

24        THE COURT:  Has anyone made any threats against you or

25   anyone else to get you to do so?

1    DEFENDANT:  No.

2    THE COURT:  Are you pleading guilty to these offenses

3  then because you are guilty of these offenses?

4    DEFENDANT:  Yes, Your Honor.

5    THE COURT:  Do you have any questions about anything

6  I've asked you or anything in the plea agreement?

7    DEFENDANT:  No.

8    THE COURT:  Mr. Maier, any other area of inquiry you

9  think I should go into?

10    MR. MAIER:  No, thank you, Your Honor.

11    THE COURT:  And Mr. Musolf, any other area you think I

12  should go into?

13    MR. MUSOLF:  No, Your Honor.  Thank you.  Very well

14  then.  Mr. Yang tell me out loud and for the record what is your

15  plea to the charge of armed bank robbery as charged in Count 1

16  of the indictment your plea?

17    DEFENDANT:  Plead guilty.

18    THE COURT:  Okay.  And Count 2, the charge of

19  brandishing --  using a firm in furtherance of a crime of

20  violence as charged in Count 2, your plea?

21    DEFENDANT:  Plead guilty.

22    THE COURT:  Okay.  In order to accept your pleas, I

23  not only have to make sure that they are entered knowingly and

24  voluntarily, but I also need to be sure there's a factual basis

25  for your pleas.  And the Government has offered as a factual

1  basis a summary of the evidence it believes it would be able to

2  introduce if this case went to trial, and that's in paragraph 5

3  on pages 2 and 3.  Do you have any objection to my relying upon

4  the Government's summary of evidence there for the purpose of

5  accepting your plea here today?  Are those facts essentially

6  true that they describe in the plea agreement?  In other words,

7  you went into the Community First Credit Union wearing a black

8  hooded sweatshirt, theater mask and sunglasses, and you had the

9  Savage semi-automatic .22 with the sawed-off barrel?  Did you do

10 all that?

11          DEFENDANT:  Yes, I did.

12          THE COURT:  Why did you do that?

13          DEFENDANT:  I was --  that day I was playing a video

14 game.  So after my head injury, I wasn't sure what was going on.

15 I was confused of everything, and I just thought that things

16 that was wrong were right.  After playing the video game, I just

17 thought that I was in the video game, and I went to go rob a

18 bank.

19          THE COURT:  And Mr. Musolf, you've investigated this

20 sufficiently to conclude that this --  There's not a valid

21 insanity defense here?

22          MR. MUSOLF:  Yes, Your Honor.

23          THE COURT:  I note that the report is on file.

24          MR. MUSOLF:  We do acknowledge the report, and I guess

25 we agree it doesn't rise to the level of a legal insanity

1  defense despite the fact that there are some issues.

2      THE COURT:  Okay.  Very well.  If these facts then --

3  If you're agreeing those facts are correct, I'm satisfied on

4  this record that pleas are entered knowingly and voluntarily.

5  The defendant understands the elements of the offense, the

6  maximum penalties, the mandatory minimums.  He understands the

7  guidelines.  He also understands the rights he's giving up by

8  entering pleas of guilty.  He's freely and voluntarily waived

9  those rights, freely and voluntarily likewise entered those

10  pleas of guilty, and there is a factual basis set forth on the

11  record that supports the pleas.  I accept the pleas of guilty

12  and find the defendant, Xengxai Yang, guilty of armed bank

13  robbery as charged in Count 1 and brandishing a firearm --

14  brandishing a firearm in furtherance of a crime of violence,

15  specifically I find that the firearm involved a short-barreled

16  riffle as defined in Title 26, § 5845(a)(3).  He stands then

17  convicted of those offenses on are 17th of January, 2020, and

18  we'll schedule this matter for sentencing.  I've been asked to

19  place it on the calendar the week of April 13, 2020.  Mr. Musolf

20  and it is that far down the road because we prepare a very

21  thorough Presentence Report that will tell us more about these

22  things.

23      MR. MUSOLF:  I am free all week.

24      THE COURT:  Okay.  So April 13th, Mr. Maier, how does

25  that look for you?

1        MR. MAIER:  Any day any time that week.

2        THE COURT:  How about Monday the 13th at 1:30 in the

3   afternoon?

4        MR. MUSOLF:  What time?

5        THE COURT:  1:30.

6        MR. MUSOLF:  That's fine.

7        MR. MAIER:  That's fine.  Thank you, Your Honor.

8        THE COURT:  Anything else we should address today?

9   Very well then.  This matter is concluded.  Thank you.

10      (Whereupon proceeding was concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, SUSAN ARMBRUSTER, RMR, Official Court Reporter and Transcriptionist for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing pages are a true and accurate transcription of the audio file provided in the aforementioned matter to the best of my skill and ability.


Signed and Certified November 15, 2021.

/s/Susan Armbruster

Susan Armbruster

Susan Armbruster, RPR, RMR
United States Official Reporter
517 E Wisconsin Ave., Rm 200A,
Milwaukee, WI 53202
Susan_Armbruster@wied.uscourts.gov